IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BUZZIE SMITH, individually and on behalf of The Heirs and Estate of CHARLES A. SMITH, deceased;<br><br>Plaintiff,<br><br>v.<br><br>TERUMO CARDIOVASCULAR SYSTEMS CORPORATION; IHC HEALTH SERVICES, INC.; and INTERMOUNTAIN HEALTH CARE, INC.;<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:12-cv-998<br><br>Chief District Judge David Nuffer<br><br>Magistrate Judge Paul M. Warner |

Chief District Judge David Nuffer referred this matter to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Buzzie Smith's ("Plaintiff") motion to compel answers to deposition questions.[2] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket nos. 32 & 37.

[2] *See* docket no. 38.

## BACKGROUND

On September 13, 2010, Charles Smith was undergoing open heart surgery at the Intermountain Medical Center, when his blood ceased to flow for approximately eleven minutes. Plaintiff alleges that the improper flow of Mr. Smith's blood was caused by either a defect in or malfunction of Terumo Cardiovascular Systems Corporation's ("Terumo") heart/lung bypass machine, or the improper use of the bypass machine by employees of IHC Health Services, Inc.; Intermountain Medical Center; and Intermountain Health Care, Inc. (collectively, "IHC"). During the surgery, and while Mr. Smith's blood was not properly flowing, IHC employees called Terumo representatives to notify them of the event.

Terumo initiated an investigation to comply with numerous regulatory programs developed and enforced by the Federal Drug Administration. The investigation allegedly included two telephone calls between Terumo representatives and IHC employees on the date of the surgery, as well as a visit to Intermountain Medical Center made by Terumo for the purpose of examining the bypass machine. During the visit to Intermountain Medical Center, Terumo met with employees of IHC as part of Terumo's obligation to identify the cause of the adverse action and to prevent future recurrence. Moreover, the investigation allegedly included a conference call held between Terumo and IHC to follow up on Terumo's visit to Intermountain Medical Center.

During the deposition of Stephen Garrett, an IHC perfusionist, Plaintiff's counsel attempted to ask him specific questions about the conversations that took place on the evening of Mr. Smith's surgery involving Mr. Garrett, Terumo employee Bob Herbert, and IHC technical specialist David Douglas. IHC's counsel objected on the basis of the care review/peer review

privilege and instructed Mr. Garrett not to answer. While Plaintiff has not conducted the additional depositions of IHC employees, Plaintiff's counsel believes that IHC intends to invoke the peer care/peer review privilege regarding the conversations that took place during Terumo's investigation.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The broad language used in the rule suggests that it is to be liberally construed, thereby allowing discovery of all relevant information, even if that information may not be admissible at trial. *See id.* Although the rules regarding discovery are to be liberally construed, they are not without limits or privileges. Because such privileges contravene the fundamental principles of discovery, the court construes such privileges narrowly and "only to [a] very limited extent." *Trammel v. United States*, 445 U.S. 40, 50 (1980).

Rule 501 of the Federal Rules of Evidence provides that in civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Thus, because rule 26(b)(1) of the Utah Rules of Civil Procedure sets forth the rules regarding the care review/peer review privilege, it is the applicable rule in this matter. The rule states, in relevant part, that

> [p]rivileged matters that are not discoverable or admissible in any proceeding of any kind or character include all information in any form provided during and created specifically as part of a request for an investigation, the investigation, findings, or conclusions of peer review, care review, or quality assurance processes of any organization of health care providers as defined in the Utah Health Care Malpractice Act for the purpose of evaluating care provided to reduce morbidity and mortality or to improve the quality of

>> medical care, or for the purpose of peer review of the ethics, competence, or professional conduct of any health care provider.

Utah R. Civ. P. 26(b)(1). The burden is on the "party asserting a privilege to establish that the material sought is protected from discovery." *Allred v. Saunders*, 342 P. 3d 204, 211 (Utah 2014).

In the instant motion, Plaintiff seeks to compel IHC's employees to provide answers to deposition questions concerning the conversations that took place between Terumo employees and IHC's employees during Terumo's investigation. Plaintiff contends, and Terumo agrees, that the peer review/care review privilege does not apply in this situation because the information being sought was created by Terumo's investigation and was not created specifically, or solely, for care review purposes. In response, IHC asserts that the information in question was provided to Terumo in an effort to find the cause of the problems with the machine, in the context of the hospital's regular process to evaluate and improve patient care, and is therefore protected from disclosure.

This court concludes that IHC's argument is flawed for several reasons. It assumes that the information surrounding Terumo's investigation was solely for the benefit of IHC's efforts to find out why the bypass machine did not perform as expected. However, the investigation was conducted by Terumo to comply with FDA regulations and was not for the sole benefit of IHC. In addition, Terumo is not an entity to which the privilege extends. The information IHC provided to Terumo was not provided to a health care provider, a health care facility, a peer review committee, or an in-house committee that would qualify the communication(s) for the care review privilege. *See* Utah Code Ann. § 26-25-1(1)-(3). While IHC provided information to Terumo that IHC may have used in their own care review, Terumo was not engaged in care

4

review as envisioned by the care review statute and, in any event, was not a defined entity that could receive the information and have it remain care review privileged.

IHC contends that the information Plaintiff seeks "constitutes information provided during and created specifically as part of an investigation of care review or quality assurance processes of an organization of health care providers for the purposes of evaluating care to reduce mortality and morbidity or to improve the quality of medical care."[3] Again, the court disagrees. IHC is attempting to expand the scope of the privilege at issue by suggesting that anything that may end up as part of a care-review investigation is protected. But that is not what the rule says. It says that the information must be "provided during and created specifically" as part of a request for an investigation or the actual investigation, not simply that it eventually was included in an investigation. There is no evidence of any request by IHC for an investigation in this case. Instead, IHC argues that the conversations were held and information gathered as part of "an investigation," which it defines as "a systematic inquiry regarding some question."[4] For the privilege to apply, the investigation cannot be by just anyone; it must be part of a peer-review, care-review, or quality assurance process of an "organization of health care providers" as defined in the Utah Health Care Malpractice Act for the purpose of evaluating care provided to reduce morbidity and mortality (among other things).

Furthermore, IHC relies on the affidavit testimony provided in support of its memorandum.[5] The court notes that the affidavits speak in conclusory terms, carefully tracking

---

[3] *See* id. at 13

[4] Docket no. 43 at 10.

[5] *See* docket no. 46 at 11.

the key elements of the language of rule 26(b)(1).  "To hold that the affidavit[s] set[] forth an adequate evidentiary basis for the care review privilege leaves [IHC] with a virtual monopoly on the information the trial court will be able to consider."  *Cannon v. Salt Lake Reg'l Med. Ctr., Inc.*, 121 P.3d 74, 79 (Utah Ct. App. 2005).  Putting aside the fact that the affidavits attempt to create a "virtual monopoly on the information," the testimony contained in them are irrelevant.  Whatever IHC's employees thought the purpose of their conversations were during the investigation is of no moment to the court and does not change the purpose of Terumo's investigation.  While the IHC employees may have had an expectation that the information they discussed might later be used by IHC to prevent similar problems in the future, that expectation is not enough to make the conversations with Terumo representatives privileged.

In conclusion, Terumo was conducting an investigation to abide by FDA regulations.  Thus, its investigation was not "created specifically as part of an investigation of care review or quality assurance processes."  Utah R. Civ. P. 26(b)(1).  Rather, it was created and conducted by Terumo to determine what happened in Mr. Smith's operating room.  Plaintiff ought to be afforded the opportunity to understand what did in fact occur in the operating room.

## **CONCLUSION**

IHC has not met its burden demonstrating that the information requested is privileged, and, as such, Plaintiff's motion is hereby **GRANTED**.  Accordingly, Plaintiffs may inquire as to

the content of the conversations between Terumo representatives and IHC employees as set forth in their motion and memoranda.

    **IT IS SO ORDERED**.

    DATED this 10th day of August, 2015.

                                          BY THE COURT:

                                          PAUL M. WARNER
                                          United States Magistrate Judge